The S. H. NEVERS CORPORATION

v.

HUSKY HYDRAULICS, INC.

Supreme Judicial Court of Maine.

Nov. 30, 1979.

Bither & Goodwin by Thomas L. Goodwin (orally), Houlton, for plaintiff.

Barnes & Sylvester by Torrey A. Sylvester (orally), Houlton, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY, NICHOLS and GLASSMAN, JJ.

GLASSMAN, Justice.

Husky Hydraulics, Inc. (Husky) appeals from a judgment of the Superior Court, Aroostook County, in the amount of $17,-000.00, entered following a trial in which the jury found Husky had breached an express warranty in the sale of a defective logging machine manufactured by the appellant. We affirm the judgment.

This dispute involves two separate actions arising from the sale of a heel boom crane, a machine designed to facilitate the loading of timber, which proved defective when used by the appellee, The S. H. Nevers Corporation (Nevers), in its timber harvesting business. The machine had been manufactured by the appellant Husky and sold to Nevers on July 24, 1973 by Canaan Equipment Corporation (Canaan), an authorized distributor. Because of the procedural complexity within which the issues on this appeal arise, it is necessary to review in some detail the procedural chronology of the two actions which resulted from this dispute.

On April 14, 1975, Nevers brought an action in the Superior Court, Aroostook County, bearing docket number CV–75–99, charging Canaan with misrepresentation and breach of express and implied warranties. On April 17, 1975, Canaan answered and filed a counterclaim against Nevers and a third-party complaint against Husky. The counterclaim alleged that Nevers owed Canaan $16,093.87 for materials furnished to Nevers and for labor rendered by Canaan in connection with unsuccessful attempts to repair the log loader. In its third-party complaint, Canaan asserted that Husky, as the manufacturer, was solely responsible for any damages caused by the defective

unit.[1]  In addition, Canaan claimed that Husky had expressly and impliedly warranted the merchantability of the log loader and, in the event Canaan did not prevail on its counterclaim, Husky should be ordered to pay the $16,093.87 to Canaan for its expenses in attempting to repair the unit. On June 18, 1975, Husky answered the third-party complaint and filed a counterclaim against Canaan.  Husky alleged that any sum due Nevers was the result of Canaan's negligent failure or intentional refusal to follow the instructions and recommendations of Husky in the maintenance, operation and repair of the log loader.

During the pendency of this action, Canaan ceased doing business as a retailer of heavy equipment and, deciding not to pursue the action further, directed its counsel to move for leave to withdraw.  This motion was granted and, in an order entered on February 15, 1977, Canaan was declared in default for failing to file a pre-trial memorandum and for failing to appear at the pre-trial conference.

On May 18, 1977, Nevers filed a motion seeking appointment of a referee to assess damages and establish dismissal of the counterclaim.  This motion was granted and an order appointing a referee was entered on June 20, 1977.  The report of the referee was filed on August 31, 1977, finding that Canaan was indebted to Nevers in the amount of $11,500.00 plus costs.  No judgment has ever been entered.

On May 19, 1977, Nevers moved to amend its complaint to join Husky as a party defendant.  On June 13, 1977, prior to entry of the order appointing the referee and in apparent disregard of M.R.Civ.P. 14(a), the presiding Justice in the Superior Court denied the motion to amend "without preju-

dicing the right of plaintiff to institute suit against Husky Hydraulics, Inc."

On June 23, 1977, Nevers commenced a separate action in the Superior Court, Aroostook County, bearing docket number CV–77–216, against Husky, seeking damages for an alleged breach of the implied warranty of fitness.  The court later permitted Nevers to amend its complaint to allege a count for breach of express warranty.  In its answer, Husky asserted res judicata as a defense.  Husky also filed a motion to dismiss the complaint on the ground of res judicata, which motion was denied without prejudice.  In its pre-trial memorandum, Husky noted its defenses of res judicata and collateral estoppel.  In a pre-trial order, the Justice of the Superior Court made the following notation: "Affirmative defenses of res judicata and collateral estoppel submitted to the court by agreement and upon request to take judicial notice of CV–75–99.  Defenses overruled.  Rule 12(b)(6) defenses denied."  Following a jury trial, a verdict was returned for Nevers and against Husky in the amount of $17,000.00 for breach of express warranty and judgment was entered upon that verdict.  It is from this judgment that Husky appeals.

Husky first contends that the second action is barred by the doctrine of res judicata or collateral estoppel.  Where there has been a valid final judgment in a prior action, the doctrine of res judicata bars relitigation of the same claim by the parties or their privies.  The scope of this preclusion extends to all matters which were, or might have been, litigated in the prior action.  *Kradoska v. Kipp*, Me., 397 A.2d 562, 565 (1979); *Bray v. Spencer*, 146

---

1. There may be some question as to whether this was truly a third-party complaint.  M.R. Civ.P. 14(a) provides in pertinent part:

    At any time after commencement of the action a defendant as a third-party plaintiff may cause to be served a summons and complaint upon a person not a party to the action *who is or may be liable to such third-party plaintiff for all or part of the plaintiff's claim against him.* (Emphasis added).

A defendant may not implead a third party for the purpose of urging that it is the third party who is liable to the plaintiff instead of the defendant.  1 R. Field, V. McKusick & L. Wroth, Maine Civil Practice § 14.2 (1970).  All parties have treated this pleading as a proper third-party complaint, and we therefore construe it as asserting a right in the defendant to indemnification from the third-party defendant arising out of their relationship as distributor and manufacturer of the defective part.

Me. 416, 418, 82 A.2d 794, 795 (1951). Serving the same interest of judicial economy, the related doctrine of collateral estoppel provides that the determination of an essential fact or issue that has been actually litigated and resolved by a valid final judgment in a prior action is conclusive on that fact or issue in subsequent litigation between the parties or their privies. *Hossler v. Barry*, Me., 403 A.2d 762, 767 (1979); *Chandler v. Dubey*, Me., 378 A.2d 1096, 1098 (1977).

■ The application of res judicata or collateral estoppel requires as a predicate a valid final judgment in the prior action. *Hossler v. Barry, supra*, 403 A.2d at 767; *Kradoska v. Kipp, supra*, 397 A.2d at 565. Although both parties to this appeal assert that a final judgment was entered in CV–75–99, a review of the docket in that case filed as a part of the record on this appeal reveals that they are in error. In that action a default was entered against Canaan and pursuant to an order of reference the referee assessed Nevers' damages and filed his report. No judgment was ever entered on the referee's report. For there to be a final judgment as to Nevers' claim against Canaan, a judgment must in fact be entered. *Dufour v. Silsby*, Me., 405 A.2d 737, 738 (1979); *Adams v. Alley*, Me., 308 A.2d 568, 571 (1973). Moreover, an entry of judgment on Nevers' claim alone would not be a final judgment since no judgments were ever entered on the two counterclaims and the third-party complaint. *See* M.R. Civ.P. 54(b).

Husky also contends that Nevers' claim against it is barred by that portion of M.R. Civ.P. 14(a) which requires a plaintiff to assert against a third-party defendant any claims arising out of the transaction or occurrence that is the subject matter of the basic action. The specific language of Rule 14(a) to which Husky refers provides:

The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that

is the subject matter of the plaintiff's claim against the third-party plaintiff, *and his failure to do so shall have the effect of the failure to state a claim in a pleading under Rule 13(a).* (Emphasis added).

Husky's argument is that Nevers' failure to assert its claim against Husky in the original action barred the second action.

We have not before had occasion to construe the provision of Rule 14(a) emphasized in the preceding quotation. It is not found in the federal rule on third-party practice. *See* F.R.Civ.P. 14(a). According to the Reporter's Notes to our Rule 14(a), the purpose of the claim preclusion is to assure fairness to the third-party defendant by requiring "the plaintiff to clean up in a single action the entire controversy arising out of a single transaction or occurrence." To evaluate Husky's contention, we must examine the procedure by which a plaintiff may assert his claim against a third-party defendant.

■ It has been suggested that under the federal rule a plaintiff may assert his claim either by filing a new pleading or by amending his original complaint. *See* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1459 (1971). We conclude that under the Maine rule a plaintiff may not assert his claim against a third-party defendant by a new and separate pleading; we reach this conclusion because Rule 7(a) enumerating the pleadings which may be filed in a civil action does not enumerate any pleading that could be used to assert the plaintiff's claim. The rule concludes with the following language: *"No other pleading shall be allowed,* except that the court may order a reply to an answer or a third-party answer." M.R.Civ.P. 7(a). (Emphasis added). Therefore, the plaintiff may bring his claim against the third-party defendant only by amendment to his original complaint. The method of amendment and the time within which the amendment may be made is established by Rule 15(a).[2]

2. M.R.Civ.P. 15(a) provides in pertinent part: A party may amend his pleading once as a matter of course at any time before a respon-

sive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed

Ordinarily, the plaintiff must seek leave of court for the amendment. The court should freely grant leave to make such an amendment because a final judgment would bar the plaintiff's unasserted claim.

The application of the principles enunciated above would foreclose Nevers' independent action against Husky were it not for the peculiar circumstances of this case. It is axiomatic that the rules are to be interpreted "to secure the just, speedy and inexpensive determination of every action." M.R.Civ.P. 1. Nevers did attempt to assert its claim against Husky in the first action by moving to amend its complaint. With apparently no recognition of the existence of the bar of Rule 14(a) by either court or counsel, the court denied the motion to amend. There was no intention on the part of the court to preclude Nevers' claim against Husky since the order denying the motion to amend expressly stated that it was "without prejudicing the right of plaintiff to institute suit against Husky Hydraulics, Inc."

Furthermore, Husky has waived its right to rely upon the bar of Rule 14(a) since it never called the provisions of that rule to the court's attention in either of the two actions. *See Reville v. Reville*, Me., 289 A.2d 695, 697 (1972). Although Husky opposed Nevers' motion to amend its complaint in the first action by a document captioned "Motion in Opposition to Motion To Amend," it neither cited nor relied upon Rule 14(a). In its motion to dismiss Nevers' complaint in the second action, Husky did not cite or rely upon Rule 14(a). At the pre-trial conference in the second case when by agreement of the parties the presiding Justice undertook to rule on the defenses of Husky and denied them, Husky neither cited nor relied upon Rule 14(a). Indeed, it was conceded at oral argument that Rule 14(a) was not raised until Husky filed its brief on appeal in this Court.[3]

■ For the foregoing reasons and because the case between Nevers and Husky has been fully resolved by a jury trial and judgment, it would be unjust to the parties and contrary to the overriding purpose of judicial economy now to rule that Nevers was barred from asserting its claim against Husky in an independent action.[4]

■ Husky also contends that the evidence is insufficient to support the jury's verdict in favor of Nevers. The presiding Justice charged the jury on express warranty (11 M.R.S.A. § 2–313) and on the implied warranty of merchantability (11 M.R.S.A. § 2–314). By special verdict the jury found that Husky had breached an express warranty. Husky argues that the only express warranty it made was a standard form warranty allegedly accompanying the sale which expressly warranted to repair or replace defective parts which were returned to Husky within six months of the date of purchase, limited its liability for consequential damages and excluded all other warranties express or implied. It becomes unnecessary for us to decide whether that form was effective under 11 M.R.S.A. § 2–719 to

upon the trial calendar, he may so amend it at any time within twenty days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

3. Husky's repeated reliance on res judicata was not sufficient to assert the bar of Rule 14(a). That rule governs third-party practice; the doctrine of res judicata, relating to relitigation of the same claim by parties or their privies, has only marginal relevance to a claim between litigants who, as to each other, need not be opposing parties in the first action. The claim preclusion of Rule 14(a) reflects a policy judgment of the Supreme Judicial Court, in exercising its rule-making power, that a plaintiff who

fails to assert his claim against an impleaded third-party defendant shall be deemed to have waived that claim.

4. We emphasize that our holding must be strictly limited to the facts of this case. Ordinarily, from the moment a third-party defendant is impleaded the original plaintiff is no longer able to bring an independent action against the third-party defendant arising out of the same transaction or occurrence which is the subject matter of the underlying action. *See State Farm Mut. Auto. Ins. Co. v. Briscoe*, 245 Md. 147, 149, 225 A.2d 270, 271 (1967).

make the specified remedy exclusive or under 11 M.R.S.A. § 2–316 to disclaim all other warranties since there was testimony from which the jury could have found that the purchaser never received a copy of the warranty form at the time of purchase and that what purported to be the purchaser's signature on Husky's copy of the form was a forgery. *See, e. g., Hayman v. Shoemake,* 203 Cal.App.2d 140, 157, 21 Cal.Rptr. 519, 531 (1962); *DeCoria v. Red's Trailer Mart, Inc.,* 5 Wash.App. 892, 894–896, 491 P.2d 241, 243–44 (1971).

 There was evidence from which the jury could have concluded that a technical specification sheet published by Husky was shown to the purchaser at the time of the sale. Husky's service manager, who was in charge of handling warranty claims, testified that dealers were authorized to give the specification sheets to customers and to use the sheets as sales tools and that Husky stood behind the statements contained in the sheets. The technical specification sheet was received in evidence, and there was testimony from which the jury could have found that the machine failed to perform to the specifications. Having been instructed on the theory of express warranty by description (11 M.R.S.A. § 2–313(1)(b)), the jury could have properly concluded that the technical specification sheet constituted an express warranty running to Nevers which was breached when the machine failed to perform to the specifications.

 Husky also contends that the damage award is excessive. The assessment of damages is generally within the sole province of the jury. This Court will not substitute its judgment for that of the jury and will not disturb the damage award unless it is the product of bias, prejudice, improper influence, or was reached under a mistake of law or in disregard of the facts. *Michaud v. Steckino,* Me., 390 A.2d 524, 536 (1978); *Kaler v. Webster,* Me., 348 A.2d 702, 705 (1975). The presiding Justice instructed the jury on the measure of damages provided by the applicable statutes. These damages include: first, the difference at the time and place of acceptance between the actual value of the goods and their value had they been as warranted (11 M.R.S.A. § 2–714); and second, any incidental or consequential damages (11 M.R.S.A. § 2–715). There was evidence that Nevers had incurred repair costs of approximately $16,-000.00. Although instructed that it should not consider the repair costs as compensatory out-of-pocket expenses, the jury properly could have used the cost of repairs as a yardstick to determine the difference between actual value and value as warranted. *See* J. White & R. Summers, Uniform Commercial Code § 10–2 (1972). In addition, there was evidence from which the jury could have found incidental or consequential damages in the amount of $1,000.00. Thus, the award of $17,000.00 is fully supported by the evidence.

The entry is:

Appeal denied.

Judgment affirmed.