STATE OF MAINE

KNOX, ss.

AUG 22 2002

RECEIVED AND FILED
Susan Gillmor, Clerk

STATE OF MAINE

KNOX, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-011
& CV-01-091
JRA - KNO - 9/22/po

RITA E. MASIELLO,

Plaintiff

v.

DOCKET NO. CV-00-011

JAMES H. ASH, *et al.*,

Defendants

DONALD L. GARBRECHT
LAW LIBRARY

AUG 26 2002

and

ROCCO J. MASIELLO
and RITA E. MASIELLO,

Plaintiffs

v.

DOCKET NO. CV-01-091

JAMES H. ASH, *et al.*,
and ORCUTT ASSOCIATES, P.A.,

Defendants

## DECISION AND ORDER

### I.    Introduction.

This matter is before the court on four motions in these two cases which are to be considered together upon suggestion of counsel because the two cases are closely related and have some parties in common. The motions are: Plaintiff's Motion to Strike (CV-00-011), Plaintiff's Motion to Enlarge Discovery Period (CV-00-011), Motion for Approval of Dismissal (CV-00-011), and Defendant Orcutt Associates' Motion to Dismiss (CV-00-091).

## II.    Procedural History.

A recitation of the procedural history of these two cases is important as it assists in the explanation of the disposition of these motions.

On February 14, 2000, Rita E. Masiello (Rita) filed a complaint against James H. Ash (Ash) and seven other defendants.[1] Ash and the other defendants either managed or owned the Samoset Resort in Rockport where Rita purchased a condominium.

In CV-00-011, she complains that her condominium is in close proximity to the 18th hole and fairway of the Samoset's golf course so that her property has been "bombarded" by errant golf ball with the result that she has suffered "great anxiety," the threat of serious bodily harm, disturbance of her tranquility, and the diminution of her property's value. Complaint, ¶¶ 17, 18. She claims the defendants are liable to her for these harms, relying on theories of Trespass, Count I; Nuisance, Count II; Invasion of Privacy, Count III; Negligence, Count IV; Breach of Warranties, Counts V, VI and VII; Unfair Trade Practices, Count VIII; Negligent Infliction of Emotional Distress, Count IX; and Misrepresentation, Counts X and XI.

In their answers one set of defendants[2] cross-claimed against others, alleging that the latter were responsible for the site placement of the condominium units.

---

[1] Two other plaintiffs joined in this complaint, John N. Park and 1926 10th Avenue North. Both have settled with the defendants and are no longer parties. *See* Consent Motion to Dismiss filed on September 17, 2001.

[2] This "set" of defendants include Samorock, L.L.C. and Samorock Resort Management Corp. (collectively "Samorock"). The "other" defendants are James H. Ash, Breakwater Associates, Clanrim Corp., and Samoset Resort Investors, a/k/a PTH Investors, L.P. (collectively "PTH"). PTH responded with a comparable cross-claim against Samorock. Ultimately, on March 9, 2001, the respective cross-claims were dismissed by stipulation of these two groups of defendants.

2

On April 27, 2000, this court (Studstrup, J.) issued the standard Scheduling Order which directed that unless the court ordered otherwise, new parties may not be joined and third-party complaints and motions to amend the pleadings "may not be filed later than 4 months from the date of this order," i.e., August 27, 2000. The order also set discovery deadlines which were to expire on December 27, 2000. On November 7, 2000, however, all deadlines cited in this order were extended by 90 days so that they expired on February 7, 2001.

Perhaps in response to this first directive, the same defendants who were subject to the original cross-claim, PTH, filed a third-party complaint against Orcutt Associates (Orcutt) on May 1, 2000. Counsel to the plaintiffs was given notice of this pleading by correspondence.

In this third-party complaint, the third-party plaintiffs, PTH, claim that Orcutt provided architectural work for the condominium project at the Samoset, including site and design work for the condominiums to be located along the 18th hole. They allege that Orcutt, via theories of breach of contract, negligence, and contribution and indemnification, is to be held liable to them for any judgment against them in favor of the plaintiff on her complaint.

On May 2, 2000, these third-party plaintiffs filed an amended third-party complaint which appears to be identical to the one which was filed the previous day. Again, counsel for the plaintiff was given notice of this pleading and Orcutt's answer, also by correspondence. Thereafter, counsel for the plaintiffs served discovery papers on counsel for this third-party defendant. *See* Notification of Discovery Service, filed November 1, 2000, December 18, 2000.

On January 29, 2001, the plaintiffs filed a motion to amend their complaint to substitute one plaintiff for another as the latter had passed away. Neither the motion nor the amended complaint sought to add Orcutt as a defendant to the complaint although the order of November 7, 2000, would have permitted adding this party at this time. All defendants named in the original complaint answered in due course.

On March 22, 2001, Rita moved to allow the late designation of a medical expert, David Kern, M.D., who would testify that the bombardment of golf balls was interfering with her recovery from a stroke. The court (Mead, J.) denied the motion on August 2, 2001, agreeing with the defendants' contention that adding this expert witness would significantly change "the configuration of the matter." The court, however, also indicated that nothing in that order would bar the plaintiff "from asserting the claim in a separate action which shall not be subject to a collateral estoppel or res judicata defense on her claims for which Dr. Kern is offered as a witness."

On August 8, 2001, PTH and Orcutt filed a stipulation of dismissal of the third-party complaint and amended third-party complaint with prejudice. Counsel for the plaintiff was not given formal notice of this dismissal, although later correspondence among counsel made reference to this event. *See* Orcutt Associates' Opposition to Plaintiff's Motion to Strike, Exhibit D. It is this dismissal which the plaintiff wishes to strike.

On December 14, 2001, Rita filed a new complaint with her husband, Rocco J. Masiello (Rocco), against the same defendants named in the first action bearing docket number CV-00-011. Rita and Rocco added, however, Orcutt as a defendant in this new case, docket number CV-01-091.

4

The new complaint is substantially similar to CV-00-011 except that it adds a new claim which the order of August 2, 2001, contemplated, namely that Rita suffered a stroke after which a golf ball shattered the glass door of her home.[3]  Complaint, ¶ 24. It also alleges that Rocco, although not an owner of the condominium, learned that the defendants were constructing a fence near it "without his knowledge or permission," obscuring the view to the ocean and upsetting him; shortly thereafter he suffered a heart attack.[4]  Complaint, ¶¶ 26, 27.  Last, the new complaint cites Orcutt for its failure to "exercise due care and . . . to follow industry standards . . ." in its design work at the Samoset, including the Masiello's home and the 18th hole which "created and/or contributed to the problems experienced by the Masiellos, namely that the Masiellos' home was in the line of fire from the eighteenth tee and that golf balls continually hit the Masiellos' house or landed in their yard." Complaint, ¶¶ 32-34.

The new complaint also adds three new theories of recovery not alleged in the first complaint, namely intentional infliction of emotional distress along with the repeated claim of negligent infliction of emotional distress in Count II, breach of contract in Count VII, unjust enrichment in Count IX, and a claim for punitive damages in Count XIII.  As noted, in all other respects the complaints in the two cases are nearly identical.

---

[3] Curiously, the new complaint alleges no causative connection between Rita's stroke and recovery problems and the "bombardment of golf balls" as her motion to allow the designation of Dr. Kern in CV-00-011 would suggest.

[4] Again, no allegation is made that the construction of the fence was causally related to Rocco's heart attack.

## II.    The Pending Motions.

### A.    Motion to Strike (CV-00-011).

In this motion, the plaintiff seeks to have stricken the dismissal of the third-party complaint against Orcutt by the third-party plaintiffs, PTH.  In support of this effort, Rita relies on M.R. Civ. P. 41(a)(1)(ii) which reads in pertinent part, ". . . an action may be dismissed by the plaintiff without order of court . . . by filing a stipulation of dismissal signed by all parties who have appeared in the action . . ." Because, the plaintiff reasons, she was a party who appeared in the action and did not sign the stipulation of dismissal, an order of the court was necessary before Orcutt could be dismissed as a defendant pursuant to the cited rule and M.R. Civ. P. 41(a)(2).  Thus, she argues, absent an order dismissing Orcutt, the stipulation of dismissal is ineffective and ought to be stricken.

Neither party has cited any current Maine authority, and the court can find none, which assists in determining whether or not "an action" constitutes the case in its entirety or is limited, as Orcutt claims, to the third-party action which PTH, and not Rita, has brought against it.  Without any firm precedent as guide, the court finds Orcutt's explanation of the rule the most reasonable, that is to say that it was a party to a third-party action in which the plaintiff never "appeared."[5]  That being so, the plaintiff has no standing to object to the dismissal and no special role conferred by M.R. Civ. P. 41(a)(2) to insist that either it assent to the dismissal or that those parties secure an order of dismissal before Orcutt can be eliminated from this case.  To conclude otherwise would mean that a plaintiff could control the voluntary disposition of a third-party action even when, as here, it has sought no remedy against the third-party defendant and the third-

---

[5] As explained herein, Rita could not have "appeared" in this third-party action because she waived her opportunity to do so.

party plaintiff wishes to abandon its "action" against that party. To retain such a party in a case under these circumstances entails an obvious waste of the time and resources of the third-party defendant and the court. Thus, the court concludes that a voluntary dismissal of a third-party defendant by a third-party plaintiff need not require the plaintiff's permission or a court order under the circumstances of a case such as this where the plaintiff has brought no "action" against the third-party defendant, Rule 41(a)(1) being fully applicable to a third-party claim. M.R. Civ. P. 41(c).[6]

This aspect of the debate as to the interpretation of Rule 41 aside, the plaintiff provides no reason why Orcutt should not be relieved as a party in this case. The third-party plaintiffs obviously do not wish to pursue their complaint against Orcutt so that nothing is accomplished by insisting on Orcutt's return to this case to answer to PTH's abandoned grievance against it. Thus, the only possible purpose of Rita's insistence that Orcutt remain in the case is so that she can pursue a claim against, and secure a remedy from, this party. Rita's opportunity to do so, however, expired some time ago and neither the civil rules nor the previous orders of this court would allow her to now add Orcutt as a direct defendant to her complaint in this case.

M.R. Civ. P. 14(a) governs the addition of a third-party defendant as a defendant to the original complaint. It reads in pertinent part:

---

[6] Interpretation of Federal Rule of Civil Procedure 41(a)(1) is consistent with this result. *See* 8 James Wm. Moore, FEDERAL PRACTICE, 41.21[1], [3][a] , (3d. ed. 1999) (a voluntary dismissal by the plaintiff or by stipulation terminates an action; "action" is "not construed so broadly as to encompass the entire controversy against all parties pending . . . but includes only the entirety of claims against a single defendant." *Id.* § 41.21[3][a] (emphasis in original)). Here, only PTH brought claims against the single defendant, Orcutt, and may therefore dismiss all claims against it by unilateral action via this interpretation of F.R. Civ. P. 41(a) as it may be compared to M.R. Civ. P. 41(a)(1). *See also General Foods Corp. v. Jay V. Zimmerman, Inc.*, No. 86 Civ. 2697, 1990 U.S. Dist. LEXIS 10156 at 2, 3 (S.D.N.Y., Aug. 7, 1990); *First National Bank of Toms River,N.J. v. Marine City, Inc.*, 411 F.2d 674, 680 (3d. Cir. 1969).

The plaintiff may assert any claim within the subject-matter jurisdiction of the court against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the plaintiff's failure to do so shall have the effect of the failure to state a claim in a pleading under Rule 13(a).

M.R. Civ. P. 13(a) mandates that a pleading must state "any claim that the pleader [the plaintiff] has against any opposing party [the third-party defendant] if it arises out of the transaction or occurrence that is the subject matter of the . . . claim . . ." A plaintiff who fails to assert a claim "against an impleaded third-party defendant shall be deemed to have waived that claim." *Nevers v. Husky Hydraulics, Inc.*, 408 A.2d 676, 680, n.3, 4 (Me. 1979). *See also* Field, McKusick and Wroth, MAINE CIVIL PRACTICE, § 14.2 (Vol. 1970).

In this instance, the text of the complaint in CV-01-091 demonstrates that any alleged grievance Rita may have against Orcutt arose out of the same transaction or occurrence as the claim expressed against the defendants in CV-00-011, namely injuries occasioned by the design and construction of the 18th hole of the golf course near her condominium unit; as such, she was required to pursue her claim against Orcutt as M.R. Civ P. 14(a) prescribes. Her failure to do so constitutes a waiver of any opportunity to pursue Orcutt in this first action. M.R. Civ. P. 13(a); *Nevers v. Husky Hydraulics, id.*

Moreover, the previous orders of this court directed the parties to join new parties or amend their pleadings no later than August 27, 2000. *See* Scheduling Order of April 27, 2000 (Studstrup, J.). Not only did the plaintiff miss this deadline to add Orcutt as a party, she missed the amended deadline (Order of November 7, 2000, Atwood, J.) which would have allowed her until February 7, 2001, to accomplish this end. Thus, because the plaintiff failed to act, it cannot now be permitted to add Orcutt as a party in contravention to the unambiguous text in the scheduling order which prohibits adding

8

parties or amending the complaint after the deadline there cited and later amended on November 7, 2000.

Notwithstanding this history, the plaintiff offers as an excuse for her inaction that, "[i]nitially Ms. Masiello had not been aware of the role of Orcutt Associates, P.A. in determining the location of her home." Motion to Strike, ¶ 3. From this, the court is apparently asked to infer that Rita simply did not know of Orcutt's role in this case so that she could have acted either in accordance with M.R. Civ. P. 14(a) or the court's scheduling order in its original form or as amended. The record, however, demonstrates that she had sufficient and reasonable opportunities to learn of Orcutt's potential liability to her well before the deadlines in this case had passed, and simply missed those opportunities.

As noted, the plaintiff was sent notice of the third-party complaint and the amended third-party complaint by PTH against Orcutt by copies of correspondence to the court accompanying the filing of these pleadings. While the record does not show whether or not these pleadings themselves were sent to plaintiff's counsel, simple inquiry to the court or counsel would have resulted in those pleadings being forwarded to him. Had this occurred, the plaintiff would have learned that the PTH defendants were blaming Orcutt for any defects in the site and design work which placed the 18th hole near her condominium and thereby allegedly caused her damage.

The record also demonstrates that the plaintiff was aware of this third-party complaint before the extended period to add parties or amend pleadings had expired on February 7, 2001, as her counsel had sent discovery notices to Orcutt's counsel on October 31, 2000, and December 15, 2000, advising the latter of the plaintiff's

designation of experts and providing responses to interrogatories and requests for documents.

Finally, the plaintiff obviously contemplated the need to amend her complaint as to the parties who would participate in this contest as she moved to substitute a party and amend her complaint on January 29, 2001, shortly before the amended scheduling order expired permitting such changes in this case. Without explanation, however, Orcutt was not added as a party then despite the plaintiff's ample opportunity to learn of its role and to seek redress against it.

This history, and the application of the cited rules, compel the court deny the motion to strike so that the stipulation of dismissal relieving Orcutt as a third-party defendant in this case will not be vacated.

## B.    Motion to Dismiss (CV-01-091).

In this motion, Orcutt, who has been named as a defendant in this action, seeks to be dismissed as a party. In support of this request, it cites the court to the procedural history recited herein, the similarity of the two complaints in the cases in which it has been named and, most importantly, the application of M.R. Civ. P. 13 and 14 which, it says, bars this second action.

As noted earlier, M.R. Civ. P. 14(a) and 13(a), when read together, require a plaintiff to assert any claim against a third-party defendant arising out of the subject matter of the original "transaction or occurrence" and the failure to do so amounts to a waiver of such a claim against a third-party defendant. Moreover, a plaintiff may not bring a new complaint against a third-party defendant in order to prosecute that claim arising out of the original transaction or occurrence which was the subject of an earlier claim against other defendants. Such is the teaching of *Nevers v. Husky Hydraulics*, 408

A.2d at 679 (Me. 1979) which unambiguously held that, "under the Maine rule, a plaintiff may not assert his claim against a third-party defendant by a new and separate pleading . . . . [t]herefore, the plaintiff may bring his claim against the third-party defendant only by amendment to his original complaint." Because the plaintiff failed, despite the opportunity to do so, to amend her complaint in docket no. CV-00-011, and name Orcutt as a defendant in that case, she is now barred from doing so in a second action. *Nevers v. Husky Hydraulics, id.* This being the clear state of the law, it must be concluded that any cause of action which Rita may have had against Orcutt arising out of the transaction she cites, namely the design and placement of the 18th hole vis-a-vis her condominium, had to have been prosecuted in her first complaint. Her failure to do so must result in her new complaint's dismissal against the movant, Orcutt. This conclusion includes Rita's medical claim by virtue of this interpretation of the law. In this regard, the order of August 1, 2001, which permitted Rita's new action against the other defendants, in the context of the procedural history of this case, obviously did not authorize Rita to pursue her medical claim against any defendants but those originally and properly named in her first complaint. Any other interpretation of that order would permit Rita to accomplish indirectly what the law prohibits directly, that is to commence a new action against a third-party defendant alleging causes of action arising out of the original transaction or occurrence. *Nevers v. Husky Hydraulics, id.*

Orcutt also correctly points out that Rocco's complaint against it should have been joined with his wife's by virtue of the scheduling order of April 27, 2000, in CV-00-011 which told its reader that, "new parties may not be joined . . . later than four months from the date of this order," i.e., August 27, 2000. Although this deadline was extended to February 7, 2001, and Rita had taken advantage of that extension once to drop two

plaintiffs upon their settlement with the defendants, neither she nor Rocco sought to add him as a party to seek redress for his alleged heart attack which he says he suffered in or about May of 2000 and which he, apparently, ascribes to the defendants' construction of a fence near his wife's condominium.

Despite this history of inattention to Rocco's claim, and without addressing its merits, there is no rule which bars him from pursuing his medical claim in a second action because the right of action to redress an injury to him is, of course, his and not his wife's. Thus, the motion to dismiss Orcutt as a defendant to Rocco's claim stemming from his alleged heart attack cannot be granted for this reason and because Rocco never waived his opportunity to proceed in CV-00-011 against any potential defendant because he was not a party in that case.

## C.    Motion for Approval of Dismissal (CV-00-011).

In this motion, all parties except Orcutt and Rita, seek court approval of the dismissal of CV-00-011. Orcutt did not endorse this joint motion, apparently because it believed it was unnecessary to do so as it had been dismissed as a third-party defendant -- its only role in this case. For her part, Rita agreed to favorable action on this motion only if the motion to dismiss in CV-01-091 would be denied in full. Because that motion is not to be denied, CV-00-011 cannot be dismissed via the rule cited by the parties, M.R. Civ. P. 41(a)(2), because the dismissal is not "at the plaintiff's instance." So, because the plaintiff has expressed objection to the motion, it will be denied.

What is left is two nearly identical cases. As a result of the rulings herein, CV-00-011 is now simply the case as it was originally pled, i.e., Rita v. the PTH and Samorock defendants. The second case, CV-01-091, by virtue of the order of August 1, 2001, contains Rita's claim for a delayed stroke recovery against these same defendants. It

12

also contains Rocco's new claim to seek recovery for his medical condition against the original defendants and Orcutt. The rest of this second complaint, however, recites theories of recovery nearly identical to those expressed in CV-00-011, most of which are unrelated to Rita's medical claim[7] which is the only basis for the permission to pursue a second case via the order of August 1, 2001. Accordingly, action ought to be taken to coordinate the progress of these two cases. A variety of means to do so will undoubtedly occur to counsel. So, for example, counsel for the defendants in CV-00-011 suggested at oral argument that this motion be treated as one to consolidate the cases particularly as to a scheduling order for discovery. The court will accept the latter suggestion, but will not formally order that these cases be consolidated absent agreement of the parties or upon favorable action on a motion of one of them seeking this result.

This is because the order of August 1, 2001, which the parties acknowledge is the "law of the case," contemplates a second case in which Rita could pursue her medical claims without prejudice which might be occasioned by the result in her first case.

Also, by virtue of this order, Orcutt is a defendant only as to Rocco's claim in the second case, but not as to any claim in the first, and it may readily be understood that it may object to participation in any trial in which Rita is a plaintiff.

Next, further dispositive motions may be filed which affect Rocco's claims and/or Rita's claims in CV-01-091. If favorable action is taken on these, full consolidation may be in order; if not, the original course of these cases as contemplated

_____

7 For example, Count XII of the complaint in CV-01-091 alleges a violation of the Unfair Trade Practices Act. It is difficult to understand how that might relate to either of the plaintiffs' medical claims or to Rocco's quest for relief on other counts as his attorney acknowledges he was not a party to the purchase of the condominium.

13

by the order of August 1, 2001, may be more appropriate. In any case, the court believes that it must not prejudice the course of this case in light of these observations and must, instead, await further motions or agreement by the parties before the final course of one or both of these cases are set after discovery has been completed.

**D.    Plaintiff's Motion to Enlarge the Discovery Period (CV-00-011).**

This is the plaintiff's sixth motion to extend the discovery time periods in this case -- a circumstance which would ordinarily invite the denial of the motion. However, because no party filed an opposition to the motion, and all agreed it may be granted, the court will accede to this request as expressed in paragraph 9 of the motion and extend the discovery period in "both" cases for 120 days from the filing date of this order.

**IV.    Conclusion.**

The clerk will make the following entries:

A.    Plaintiff's Motion to Strike So-Called "Notice of Dismissal of Third-Party Complaint" (CV-00-01) is DENIED.

B.    Defendant Orcutt Associates, P.A.'s Motion to Dismiss (CV-01-091) is GRANTED in part and DENIED in part. Plaintiff Rita Masiello's claims against Defendant Orcutt Associates are DISMISSED. The motion is DENIED as to Plaintiff Rocco Masiello's claims against Defendant Orcutt Associates.

C.    Motion for Approval of Dismissal (CV-00-011) is DENIED.

D.    Plaintiff's Motion to Enlarge the Discovery Period (CV-00-011) is GRANTED. The discovery period in both CV-00-011 and CV-01-091 is extended to the date 120 days from the date this order is filed. All discovery in both cases is to be completed no later than this date.

So ordered.

Dated: August 22, 2002

John R. Atwood
Justice, Superior Court

14

Date Filed __2/14/00__      Knox     Docket No. __CV-00-011__

County

Action __Property Negligence__

RITA E. MASIELLO,
CAROL PARK, **(Dismissed 9/20/01)**
Individually and Personal Representative
for the Estate of JOHN PARK, **Dimissed**
and 1926 10th AVENUE NORTH, INC. **9/20/01**

JAMES H. ASH, BREAKWATER ASSOCIATES,
CLANRIM CORPORATION, OCEAN HOSPITALITY, INC.,
OCEAN PROPERTIES, LTD, PTH INVESTORS, LP
f/k/a SAMOSET RESORT INVESTORS,
SAMOROCK, L.L.C. and     (3RD PARTY-
SAMROCK RESORT MANAGEMENT CORPORATION PLT'S)

VS. **VS. ORCUTT ASSOCIATES (3RD PARTY-DEFENDANT)**

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| John C. Bannon, Esq. <br> PO Box 9785 <br> Portland ME 04104-5085 <br> 773-5651 <br> -Christopher B. Branson, Esq. <br> (Same Address as above) | John R. Bass, II (Ocean Hospitality, Inc., <br> PO Box 447 (Esq) Ocean Properties, Ltd, <br> Portland ME 04112 Samorock, L.L.C. and <br> 774-7600 Samrock Resort Mang. Corp) <br> Jonathan W. Brogan, Esq. (James H. Ash, <br> PO Box 4600 Breakwater Assoc. <br> Portland ME 04112 Clanrim Corp, and <br> 774-7000 PTH Investors <br> John R. Veilleux, Esq. (James H. Ash, <br> PO Box 4600 Breakwater Assoc. <br> Portland ME 04112 Clanrim Corp. and <br> 774-7000 PTH Investors) |

**DEFENDANT'S ATTORNEYS**

Rebecca H. Farnum, Esq. (Orcutt Associates)
PO Box 4630 Portland ME 04112 774-2500
**(Dismissed 8/8/01)**

Robert C. Hatch, Esq. (Orcutt Ass)
PO Box 4630, Portland ME 04112
774-2500

| Date of Entry | |
|---|---|
| 2/14/00 | Complaint, Summary sheet filed. <br> Case File Notice mailed to Attorney Bannon. |
| 2/14/00 | Copy of Complaint mailed to James McKenna, Assistant Attorney General. |